IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THUNDER PATCH II, LLC, HOC OPERATIONS, LLC, | § § § § § § § § § § § § § § | |
| *Plaintiffs*, | | 5-18-CV-00629-OLG-RBF |
| vs. | | |
| JPMORGAN CHASE BANK, N.A., AS TRUSTEE OF THE RED CREST TRUST; ANDY J. MCMULLEN, JOHN H. MCMULLEN JR., MARGIE HARRIS NEWTON, CYNTHIA CAROLE BEARD, | | |
| *Defendants*. | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando Garcia:**

This real-property dispute concerns mineral interests in and around Gonzales County, Texas. At issue presently is the Court's jurisdiction, and before the Court is a Motion to Remand filed by Plaintiffs Thunder Patch II, LLC and HOC Operations, LLC. Dkt. No. 9. Also before the Court is a somewhat related Motion for Leave to File a First Amended Complaint, Dkt. No. 38, also filed by Thunder Patch and HOC. The Court has reviewed and considered the various associated responses and replies. *See* Dkt. Nos. 11, 12, 17-1, 40. Also pending before the Court is the Motion to Dismiss Claims Against the Red Crest Trust Beneficiaries that was filed by Defendant JPMorgan Chase Bank, N.A., in its capacity as Trustee of the Red Crest Trust. *See* Dkt. No. 11. This motion also serves as a response to the aforementioned motion to remand.

1

There is further briefing associated with this motion as well, all of which the Court has considered. *See* Dkt. Nos. 12, 19, 21.[1]

For the reasons discussed below, Plaintiffs' Motion to Remand, Dkt. No. 9, should be **DENIED**, and JP Morgan's Motion to **DISMISS**, Dkt. No. 11, should be **GRANTED**. It is further recommended that Plaintiffs' Amended Complaint, Dkt. No. 8, be **STRUCK** and that Plaintiffs' belated Motion for Leave to File a First Amended Complaint, Dkt. No. 38, be **DENIED**.

I. **Factual and Procedural Background**

This action involves an effort to enforce an agreement concerning oil-and-gas interests in Gonzales County. Orig. Pet. ¶ 7. Plaintiffs Thunder Patch and HOC allege that after expending time and resources negotiating lease terms, contacting investors, running title searches, and reviewing geological and engineering data, they reached "verbal and written meetings of the minds with Defendant [JPMorgan] to sign an oil and gas lease." *Id.* According to Thunder Patch and HOC, the need to assemble sufficient acreage to legally drill horizontal wells served as a critical component of the agreement. *Id.* ¶ 8. Thunder Patch and HOC allege that, in furtherance of their agreement and in reliance on JP Morgan's representations, they obtained an oil, gas, and mineral lease from unspecified sellers. *Id.* ¶ 9. JPMorgan, however, allegedly later attempted to unjustifiably change the terms of the deal with Thunder Patch and HOC. *Id.* ¶¶ 12, 15.

As a result of the ensuing dispute, Thunder Patch and HOC—on May 22, 2018—sued JPMorgan, as trustee of the Red Crest Trust, in the 25th Judicial District Court of Gonzales County, Texas. *Id.* Thunder Patch and HOC sought a declaration that the lease they negotiated

---

[1] The District Court assigned to the undersigned the disposition of all pre-trial matters in this action, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 18. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

with JPMorgan is valid and binding. And, although not entirely clear, they appeared also to allege that JPMorgan wrongfully converted certain royalty payments relating to another lease. Thunder Patch and HOC further asserted state law causes of action against JPMorgan, as trustee of the Red Crest Trust, to quiet title and for trespass to try title, conversion, and breach of fiduciary duty.

JPMorgan timely removed the action to federal court a month later. *See* Dkt. No. 1. In support of removal it alleged complete diversity, stating that it is a national bank with its main office in Ohio and that, "[u]pon information and belief," none of Thunder Patch's and HOC's members are citizens of Ohio. *Id.* ¶¶ 6-8. Approximately three weeks after removal, Thunder Patch and HOC filed an amended complaint—without leave of court—joining the beneficiaries of the Red Crest Trust as defendants. *See* Dkt. No. 8. That same day, Thunder Patch and HOC filed their Motion to Remand, asserting no federal diversity jurisdiction exists because the trust beneficiaries all reside in Texas, and "[b]ecause Plaintiff HOC Operations, LLC is a Texas entity." *See* Dkt. No. 9 at 4. JPMorgan thereafter moved to dismiss the nondiverse beneficiaries, arguing they are not required parties under Rule 19 and their presence may destroy diversity jurisdiction. *See* Dkt. No. 11 at 4.

On October 11, 2018, the undersigned issued an Order to Show Cause. *See* Dkt. No. 36. To Thunder Patch and HOC, the Order explained that, contrary to their allegations, "JPMorgan was sued in its capacity as a trustee; Red Crest Trust was not named as a defendant in this action." *Id.* Therefore, the Order clarified, "in assessing whether diversity jurisdiction exists, the Court looks to the citizenship of JPMorgan only, provided JPMorgan 'has sufficiently real and substantial control over the trust's assets.'" *Id.* (quoting *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 359 (5th Cir. 2017)).

3

Because JPMorgan appeared to have sufficiently real and substantial control over the trust's assets, the Order explained, the citizenship of the individual trust beneficiaries is inconsequential in assessing whether diversity jurisdiction exists here. *Id.* at 3.

The Order further advised that leave to file an amended complaint had not been sought and yet was required in these circumstances, notwithstanding Plaintiffs' invocation of Rule 15(a). *See id.* at 5. The Order therefore directed Thunder Patch and HOC to show cause why their Amended Complaint should not be struck for impermissibly adding nondiverse permissive parties after removal. *See id.* at 6.

The Order also addressed JPMorgan. In its notice of removal, JPMorgan failed to provide the citizenship of each of Thunder Patch's and HOC's members. The Order directed JPMorgan to file an amended Notice of Removal that adequately established the Court's jurisdiction. *See id.* at 4. Specifically, the Court ordered JPMorgan to consult with counsel for Thunder Patch and HOC as well as the sources at its disposal, including court filings and other public records, to determine the identity and citizenship of Thunder Patch's and HOC's members. Only following this inquiry, the Order explained, could JPMorgan allege complete diversity in good faith based on information and belief. *Id.*

On October 20, 2018, JPMorgan filed an Amended Notice of Removal. *See* Dkt. No. 37. In it, JPMorgan alleged that complete diversity exists "[i]n good faith [and] on information and belief." *See id.* ¶¶ 8-12. In support, JPMorgan asserted that after consulting with opposing counsel and the relevant public records from the California and Texas Secretaries of State, it found no evidence indicating that any of Thunder Patch's or HOC's members are citizens of Ohio. *See id.* ¶¶ 8-12.

On October 31, 2018, Thunder Patch and HOC responded to the Show Cause Order and, for the first time, sought leave to file their First Amended Complaint. *See* Dkt. No. 38.

## II.  Analysis

*JP Morgan's Citizenship—Not the Citizenship of the Red Crest Trust—Matters Here.* As explained in the Show Cause Order, when a trustee such as JPMorgan is sued in its capacity as a trustee, it is the citizenship of the trustee—not the trust's beneficiaries—that matters for diversity of citizenship purposes. *See* Dkt. No. 36 at 2-3. This rule governs so long as the trustee has "real and substantial control" over the trust's assets. *Byname*, 866 F.3d at 359 ("BONYM was sued in its capacity as a trustee. Thus, *Navarro* controls, and the only remaining question is whether BONYM possesses the sort of 'real and substantial' control over the trust's assets discussed in *Navarro* [*Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)].").[2]

Thunder Patch and HOC are mistaken to urge a different rule here, in reliance on *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96 (1990), and *Berry v. Chrysler*, No. H-12-1492, 2013 WL 416218, at *7 (S.D. Tex. Jan. 31, 2013). *Carden* is inapposite to this case; it concerned whether the citizenship of all partners, limited as well as general, controls the citizenship of a limited partnership. And to the extent *Carden* informs the issue presented here, it confirms that the earlier holding in *Navarro* controls and requires that a trustee's citizenship is what matters for diversity purposes under the circumstances presented here, not the citizenship of trust beneficiaries. The Fifth Circuit has agreed with this conclusion in several recent decisions,

---

[2] *See also SGK Properties, L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Commercial Mortgage Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 940 (5th Cir. 2018) ("The [*Navarro*] Court held that when a trustee is named as a defendant in a lawsuit, '[the] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.'") (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)); *Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 Fed. App'x 330, 332 (5th Cir. Dec. 14, 2016), *as revised* (Mar. 22, 2017) (same).

including in *Byname,* 866 F.3d at 359.³ *Berry*, a nonbinding decision from the Southern District of Texas, predated the Fifth Circuit's interpretation of *Navarro* in *Bynane*, *SGK Properties*, and *Justice* (see footnote 2 above). It too is distinguishable. *Berry* was a products-liability action against Chrysler Group LLC, one of whose members was a trust. In assessing Chrysler's citizenship, the Court looked to the citizenship of the trust's members. *See Berry*, 2013 WL 416218, at *4-6. *Berry* does not provide significant insight into the issue presented here where the trustee—not the trust—is sued.

Here, Plaintiffs sued JPMorgan as the trustee for the Red Crest Trust; the Red Crest Trust is not a named defendant. Indeed, according to Thunder Patch and HOC, Texas law required them to file suit in this exact manner. Accordingly, the rule from *Navarro* controls here, as the Fifth Circuit has explained. *See Bynane*, 866 F.3d at 359; *SGK Properties*, 881 F.3d at 940; *Justice*, 674 Fed. App'x at 332.

It is apparent from the record and pleadings that JPMorgan has sufficiently real and substantial control over the trust's assets, and it therefore is the entity that matters for purposes of diversity jurisdiction. *See Schaffer v. U.S. Bank Tr., N.A. for LSF9 Master Participation Tr.*, No. 1:17-CV-297-RP, 2017 WL 6029646, at *4 (W.D. Tex. Dec. 5, 2017) (collecting cases and looking to the pleadings and evidence to determine "the powers and limitations of the trustee and the trust beneficiaries"). JPMorgan's powers under the Trust Agreement are quite broad.⁴ According to the Agreement, the trustee has the "full power to manage, to control and to lease

---

³ *See* the decisions cited in footnote 2 *supra* as well as *Universitas Educ., LLC v. Nova Grp., Inc.*, 513 Fed. App'x 62, 64 (2d Cir. 2013) ("Contrary to Nova Group's contentions, *Carden v. Arkoma Associates*, 494 U.S. 185, 110 S. Ct. 1015, 108 L.Ed.2d 157 (1990), which concerned the citizenship of a limited partnership, did not overrule *Navarro*. Rather, the Supreme Court explicitly held that the two opinions did not conflict. . . *Navarro* therefore remains good law.") (citations omitted).

⁴ Although Texas American Bank/Fort Worth, N.A. is named as the trustee under this agreement, both parties appear to agree that JPMorgan is Texas American's successor-in-interest.

without warranty the Trust property, in whole or in part, on such terms and for such consideration . . . as it shall deem proper," as well as the "power and discretion" to "commence or defend at the expense of the trust estate any litigation affecting the trust or any property of the trust estate deemed advisable by the Trustee." *See* Dkt. No. 40, Ex. A ¶¶ 7-8(d). JPMorgan has also provided affidavit evidence explaining that the Red Crest Trust beneficiaries "have no management or administrative responsibilities over the Trust or its assets," "have no authority to negotiate or enter into any leases on behalf of the Trust, and no authority to negotiate or settle any claims made against the Trust." *See* Dkt. No. 11-1 ¶¶ 5-6. Finally, even Thunder Patch and HOC seem to concede in their Original Petition that JPMorgan has the power to negotiate an oil and gas lease on behalf of the Red Crust Trust, which is the subject of this litigation. *See* Orig. Pet. ¶¶ 7-14.

Because JPMorgan is the party with real and substantial control over the trust's assets, it is JPMorgan's citizenship that matters here. The Amended Notice of Removal sufficiently alleges complete diversity in good faith based on information and belief. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015); *see also Bates Energy Oil & Gas, LLC v. Complete Oil Field Sers., LLC*, No. CV SA-17-CA-808-XR, 2017 WL 8727480, at *2 (W.D. Tex. Aug. 30, 2017).

*Leave to Amend Should be Denied*. An amended pleading naming a new, nondiverse defendant in a removed case requires a court to "scrutinize that amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co*., 833 F.2d 1179, 1182 (5th Cir. 1987). This involves considering: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction;" (2) "whether plaintiff has been dilatory in asking for amendment;" (3) "whether plaintiff will be significantly injured if [the] amendment is not allowed;" and (4) "any other

7

factors bearing on the equities." *Id.* Close scrutiny of these factors counsels against permitting Plaintiffs' belated request for leave to file a First Amended Complaint.

*Factor 1—Purpose of the Amendment*. The first *Hensgens* factor looks into whether the plaintiffs "knew or should have known the identity of the nondiverse defendant when the state court complaint was filed." *Anzures v. Prologis Tex. I LLC*, 886 F. Supp. 2d 555, 562 (W.D. Tex. 2012) (quotations omitted, collecting authorities). "Where the plaintiff knew about the non-diverse party's activities at the time he filed suit but did not include that party as an original defendant, courts have viewed any later attempt to add the nondiverse party as a defendant as nothing more than an attempt to destroy diversity." *Wein v. Liberty Lloyds of Texas Ins. Co.*, No. A-15-CA-19-SS, 2015 WL 1275915, at *5 (W.D. Tex. Mar. 19, 2015) (quotations omitted).

Here, Thunder Patch and HOC allege they "initially chose not to sue the [Red Crest Trust] Beneficiaries in state court in the hopes of facilitating a speedy settlement." Dkt. No. 12 ¶ 8. "Now that such a settlement has not been reached, and considering the stricter pleading requirements of federal court," Plaintiffs allege they have properly amended and joined the trust beneficiaries within Rule 15(a)(1)'s 21-day amendment period. *Id.* As the undersigned explained in the Show Cause Order, this statement and the timing of the sought-after amendment[5] suggest that the primary purpose of the amendment was to destroy diversity. *See* Dkt. No. 36 at 5. n. 4.

Michael Shebay—a member and officer of HOC Operations—now submits an affidavit explaining that "[a]t the time the above-styled cause was filed in state court, neither Thunder

---

[5] *See Boyce v. CitiMortgage, Inc.*, 992 F. Supp. 2d 709, 717 (W.D. Tex. 2014) (explaining that "if a plaintiff moves to amend shortly after removal, some courts have viewed that as evidence of a primary purpose to defeat jurisdiction").

Patch nor HOC (collectively 'Plaintiffs') was aware of the identities of the beneficiaries of the Red Crest Trust." Dkt. No. 38-1 ¶ 3. According to Shebay, Thunder Patch and HOC always intended to add the Red Crest Trust beneficiaries as defendants and were planning on using the state discovery process to determine their identities. *Id.* ¶ 4. Even taking these allegations as true, actual knowledge is not the standard here. Rather, the Court must determine whether Thunder Patch and HOC *should have known* the identities of the Red Crest Trust beneficiaries. There is no indication in the record that the identities of the Red Crest Trust beneficiaries are secret or otherwise difficult to discover. In fact, JPMorgan has submitted information suggesting that counsel for Thunder Patch and HOC should have known the identity of the Red Crest Trust beneficiaries by virtue of a 2011 action brought against JPMorgan as the trustee of the Red Crest Trust. *See* Dkt. No. 40-1 at 20-36. Either with or without this information from other litigation, the Court finds that the primary purpose of the amendment was to defeat jurisdiction.

*Factor 2—Plaintiffs' Delay in Amending*. "In analyzing the second *Hensgens* factor, courts consider the amount of time that has passed between the plaintiff's motion to amend and the filing of the original petition and notice of removal." *Anzures*, 886 F. Supp. 2d at 565. "A delay of two months after the filing of the original complaint or almost thirty days after the notice of removal has been found dilatory, especially when a plaintiff knew of the potential defendant's role in the dispute when he filed the case in state court." *Id.* (quotations omitted, collecting authorities). The record reflects that Thunder Patch and HOC filed their First Amended Complaint almost two months (52 days) after initiating suit and 21 days after JPMorgan removed the case to federal court. Further, it was not until October 26, 2018—over 5

months after filing suit in state court and over 4 months after JPMorgan removed the case—that Thunder Patch and HOC actually sought leave to file their First Amended Complaint.[6]

When analyzing this second factor, courts consider the procedural posture of the case, with particular attention to whether "trial or pre-trial dates were scheduled" or any "significant activity beyond the pleading stage has occurred." *See Anzures*, 886 F. Supp. 2d at 565. Although the undersigned recognizes that this case is still in its early stages, "where a plaintiff's true motive in seeking to add a defendant is to defeat jurisdiction, speed is not terribly relevant." *Boyce*, 992 F. Supp. 2d at 721. Accordingly, notwithstanding the foregoing, this second factor also weighs against the amendment.

*Factor 3—Potential Injury to Thunder Patch and HOC*. In determining whether potential prejudice exists under the third *Hensgens* factor, courts consider "whether a plaintiff can be afforded complete relief in the absence of the amendment." *Anzures*, 886 F. Supp. 2d at 565. Also relevant is whether "the plaintiff will be forced to litigate their action against the non-diverse defendants in a different court system, on a different timetable, subject to different procedural rules and conflicting results, and under the weight of additional financial burden." *Adey/Vandling, Ltd. v. Am. First Ins. Co.*, No. A-11-CV-1007-LY, 2012 WL 534838, at *4 (W.D. Tex. Feb. 17, 2012).

---

[6] *See Hardy v. JPMorgan Chase Bank, Nat. Ass'n*, No. A-14-CA-360-SS, 2014 WL 2700800, at *3 (W.D. Tex. Jun. 13, 2014) ("Hardy purported to file the Amended Complaint without leave of court pursuant to Federal Rule of Civil Procedure 15(a). However, because the Amended Complaint would add nondiverse parties and destroy the basis for federal jurisdiction, Hardy was required to seek leave to file it."); *see also Horton v. Scripto-Tokai Corp.*, 878 F. Supp. 902, 908 (S.D. Miss. 1995) (disagreeing with plaintiff's view that Rule 15(a) permitted her to amend her complaint without leave of court and explaining "[w]here the addition of a party will destroy the court's jurisdiction and prejudice the other party, the general rule prevails that leave of court is necessary").

Here, Plaintiffs cite Texas Rule of Civil Procedure 39 and allege that the Red Crest Trust beneficiaries are necessary parties because they are the ultimate recipients of royalty payments stemming from the disputed mineral interests. If the amendment is denied, Plaintiffs argue they will be forced to choose whether to pursue parallel state court proceedings against the Red Crest Trust Beneficiaries and "will be at substantial risk of incurring double, multiple or otherwise inconsistent obligations."

There are too many open questions here to say definitively which way this factor points. As discussed above, the Trust Agreement confers on JPMorgan broad authority to manage, control, and lease the trust property and to defend against any litigation affecting the trust as deemed advisable by the trustee. Under Texas law, "[trust] [b]eneficiaries are not necessary parties in an action against a trustee unless the trustee clearly has an adverse interest to the beneficiaries." *Armstrong v. Steppes Apartments, Ltd.*, No. 2-97-250-CV, 1998 WL 34202656, at *8 (Tex. App.—Fort Worth Aug. 20, 1998, no pet.); *see also Smith Int'l, Inc. v. Egle Grp., L.L.C.*, No. CIVA H-04-4151, 2005 WL 6458659, at *7 (S.D. Tex. Jun. 3, 2005). There is no indication that JPMorgan's interests are at odds with the Red Crest Trust beneficiaries' interests; nor is there any indication that JP Morgan would be unable to satisfy any potential future judgment on behalf of the Red Crest Trust. *See Gallegos v. Safeco Ins. Co. of Indiana*, No. CIV.A. H-09-2777, 2009 WL 4730570, at *5 (S.D. Tex. Dec. 7, 2009). And Thunder Patch and HOC do not persuade with their conclusory assertions that the trust beneficiaries are necessary parties because interests in real property belonging to them may be impaired. JPMorgan indicates, and Thunder Patch and HOC do not appear to meaningfully contest, that trust assets are "held in its [JPMorgan's] name." Dkt. No. 40 at 1. This appears to reflect a situation in which assets are held by the trust and inure to the benefit of beneficiaries; the assets held in trust are not

in the beneficiaries' names. In other words, "[t]he Red Crest Trust beneficiaries have asserted no claim to the mineral interests which are the subject of this lawsuit." *Id*. at 7. JPMorgan's arguments on this issue, and its citation to *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906 (2017), appear more on-point than Thunder Patch and HOC's contrary position.

Ultimately, however, and given that the first two factors go against Thunder Patch and HOC (and the final factor is at most a tie), this factor is not outcome determinative. The ultimate conclusion here would not change even if this factor were to go entirely in Thunder Patch and HOC's favor, and it appears in fact to favor JPMorgan.

*Factor 4—Other Factors Bearing on the Equities*. The final *Hensgens* factor requires the Court to analyze other relevant factors that might bear on the equities. Thunder Patch and HOC argue that this factor weighs heavily in their favor because this is essentially a Texas dispute that happens to involve a trustee that is an Ohio citizen. Dkt. No. 38 at 10. But that argument seems to state considerations at play in almost all removed cases involving diversity jurisdiction, and those considerations seem offset by the fact that granting leave to amend would destroy diversity and thus would deprive JPMorgan— the removing party— of a properly invoked federal forum. *See Smith v. Robin Am., Inc.*, No. H-08-3565, 2009 WL 2485589, at *6 (S.D. Tex. Aug.7, 2009) (noting that this latter consideration can be "[t]he main concern at issue" when analyzing the fourth *Hensgens* factor). This factor is at most neutral.

After a careful analysis of the *Hensgens* factors, the undersigned concludes that leave to amend should be denied.

## III. Conclusion

For the reasons discussed above, the undersigned recommends that Plaintiffs' Motion to Remand, Dkt. No. 9, be **DENIED**, and that JP Morgan's Motion to **DISMISS**, Dkt. No. 11, be

**GRANTED**. It is further recommended that Plaintiffs' Amended Complaint, Dkt. No. 8, which was filed without leave of Court, be **STRUCK** and that Plaintiffs' Motion for Leave to File a First Amended Complaint, Dkt. No. 38, be **DENIED**. Finally, as Plaintiffs never obtained leave to file their Amended Complaint, the undersigned recommends that the Answers filed by the Red Crest Trust beneficiaries, Dkt. Nos. 42-45, be **STRUCK**.

In light of the above recommendation, **IT IS ORDERED THAT** within **ten (10) days** after this Report and Recommendation issues, the parties shall confer and submit joint scheduling recommendations to govern the remainder of this action.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and

recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 10th day of December, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE